This is a suit for declaratory judgment seeking interpretation and declaration of the legal effect of a deed executed in 1914 by Jasper Carlisle, et ux., to his son John Carlisle. Plaintiffs, the heirs of John Carlisle, also seek to quiet title in themselves as to certain mineral interests in three parcels of land-two of which were covered by the deed in issue. The trial court found the deed conveyed merely a life estate to John Carlisle with remainder to his heirs based on the following handwritten clause, viz.: "It is understood that the above party of the second part is not to sell above described lands but it is to go to his heirs." Defendants, successors in interest to a 1943 conveyance by John Carlisle of mineral interests in the three parcels, appeal the trial court's finding that John Carlisle did not have a fee simple interest to convey. We reverse.
In 1914, Jasper Carlisle conveyed Parcels 1 and 2 to his son, John, by warranty deed. A printed form deed was used with handwritten additions. That deed is set out below with the applicable handwritten portion designated by italics.
A DEED FROM J.C. CARLISLE AND WIFE
TO JOHN CARLISLE.
THE STATE OF ALABAMA, CHOCTAW COUNTY.
 BE IT KNOWN BY THESE PRESENTS, THAT WE J.C. Carlisle and M.J. Carlisle of the first part, in consideration of the sum of One Dollars, to us in hand paid by John Carlisle party of the second part, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell, and convey unto the said party of the second part the following described property, to-wit:
 NW 1/4 of SE 1/4 Sec. 29 T 11 R 3 in Choctaw Co., Alabama containing 40 acres Also 17 3/4 acres in W 1/2 of SE 1/4 Sec. 28, T11, R3 Choctaw Co. Alabama.
 It is understood that the above party of the second part is not to sell above described lands but it is to go to his heirs.
We reserve all timber on above described lands.
 TO HAVE AND TO HOLD the same unto the said party of the second part, and to his heirs and assigns, forever. And the said parties of the first part, for them and their heirs, covenant with the said party of the second part that we are lawfully seized in fee-simple of said premises; that they are free from all incumbrances; that we have a good right to sell and convey the same as aforesaid, and that we will forever warrant and defend the same unto the said party of the second part, and his heirs and assigns, against the lawful claims and demands of all persons.
 In witness whereof the said parties of the first part have hereunto set their hands and seals this 20th day of Feby [sic] in the year of our Lord 1914.
 his mark J.C. Carlisle (Seal.) *Page 950 
On the same date in 1914, Jasper conveyed Parcel 3 to another son, Ira Carlisle, by a deed which is identical in all significant respects to the deed to John, including the handwritten clause in question. Subsequently Ira conveyed Parcel 3 to his brother, John, by a deed which is sufficient to have conveyed a full fee simple title. Neither Ira nor his heirs are parties to this proceeding.
In 1943, John conveyed to R.E. Anderson an undivided one-half mineral interest in the three parcels. This deed is a warranty deed sufficient to convey full fee simple title to such mineral interest. Appellants have succeeded to the mineral title of R.E. Anderson, now deceased.
John Carlisle died, intestate, on March 30, 1960, survived by his widow and the appellees, his heirs. After the death of John and prior to the filing of this suit, proceeds from the production of oil on Parcel 1 were realized. The stakeholders, some of whom are lessees of the appellants and some of whom are lessees of the appellees, have deposited the proceeds with the trial court pursuant to ARCP 22.
Appellees claim Parcels 1 and 2 as remaindermen under the 1914 deed to John. They claim Parcel 3 under our statute of descent as the heirs of John. While the trial court quieted title in the appellees as to Parcels 1 and 2, it denied their claim to Parcel 3, reasoning that Ira did not have a fee simple interest to convey to John which could be passed down by intestacy.
At the outset, we note that the usual presumptions of correctness in the trial court's findings in cases tried ore tenus are not applicable here. This case was tried without a jury on stipulations and briefs of the parties and primarily documentary evidence. No testimony of any witness was admitted into evidence on any material matter. In such a situation, the appellate court sits in judgment on the evidence. McCullock v.Roberts, 292 Ala. 451, 296 So.2d 163 (1974).
A starting point for the construction of the deed in question is Code 1975, § 35-4-2, viz.: "Every estate in lands is to be taken as a fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly
appears that a less estate was intended." (emphasis added)
Under this statute, the presumption is, and all doubts are resolved in favor of, a fee simple estate. Johnson v. Harrison,272 Ala. 210, 130 So.2d 35 (1961). The intention to create a lesser estate must clearly appear, for the courts will not construe the grantor's words as conveying a lesser estate if a different meaning can be fairly given them. Johnson.
In the deed in question, all the clauses except one are consistent with a conveyance of a fee simple estate. Although the granting clause contains no words of inheritance, the court may look to the language of the habendum and warranty clauses to find a conveyance of a fee simple estate. See, e.g., Hardeev. Hardee, 265 Ala. 669, 93 So.2d 127 (1956). Here, both the habendum and warranty clauses contain the traditional words of inheritance connoting a fee simple estate, i.e., "his heirs and assigns." However, appellees contend that the handwritten clause in question clearly diminishes the interest conveyed to a life estate with remainder. We disagree.
We recognize appellees' point that handwritten portions of a deed take precedence over printed language when in conflict.Porter v. Henderson, 203 Ala. 312, 82 So. 668 (1919). However, the failure of the handwritten clause here to clearly or even minimally designate a life estate renders it ineffective.
Appellees cite three Alabama cases they consider persuasive for the proposition that only a life estate was created by the deed here. However, all the deeds in these cases use traditional life estate language which is notably absent in the case at hand. In Thompson v. Leyden, 222 Ala. 81, 130 So. 780
(1930), the deed said the land shall be the property of the grantee for "his natural life" and then provided over to the grantee's children. In Gentle v. Frederick, *Page 951 234 Ala. 184, 174 So. 606 (1937), the deed provided that "at the death" of grantee "title shall pass to her sisters." And finally, in Graves v. Wheeler, 180 Ala. 412, 61 So. 341 (1913), the court relied on the following handwritten clause as designating a life estate: "It is also expressly understood that at the death of my said wife, all of the aforementioned property shall be equally divided between my lawful children." All of these deeds clearly and expressly define a life estate with the telltale language of "for his life" or "at his death." Furthermore, each deed clearly designates specific remaindermen such as "my children" or "her sisters."
There is no such language in the instant case to defeat the presumption of a conveyance of a fee simple estate. The handwritten clause does not limit the grantee's estate to "for his life" or "at his death." The language "is not to sell above described lands" is certainly no indication of a life estate as such estates are as alienable as fee simple estates. And the language "but it is to go to his heirs" indicates merely words of limitation or inheritance. In Wilcoxen v. Owen, 237 Ala. 169,185 So. 897 (1939), this Court noted that the word "heirs," without explanation, is always to be construed as a word of limitation and not purchase. Thus, unlike the three cases cited by appellees there are no words of purchase indicating a remainder interest in the instant case.
This Court has construed language more strongly indicating a life estate than that in the instant deed, finding that the language did not clearly indicate a less estate under Code 1975, § 35-4-2. Slaten v. Loyd, 282 Ala. 485, 213 So.2d 219
(1968); Johnson v. Harrison, 272 Ala. 210, 130 So.2d 35 (1961);Hardee v. Hardee, 265 Ala. 669, 93 So.2d 127 (1956). In each of these cases, a life estate was indicated by such language as "lifetime" or "at his death," yet this Court held such language insufficient to overcome the presumption in favor of fee simple estates. In Johnson, the following language appeared in the deed following the property description: "This her home herlife time and after he [sic] death her daughters will become owner of same Daughters Margarette Johnson and Stephenie Johnson." (emphasis added) 272 Ala. at 212. Like the instant case, there were no words of inheritance in the granting clause but other clauses provided such words of limitation. Looking at the deed as a whole, the Court stated:
 The deed imports a fee simple title in all its clauses but one, which is of doubtful import. These facts, plus the presumption that every estate in lands is to be taken as a fee unless clear and expressed terms are shown to the contrary, leads to the conclusion that the grantee, Hazel Curlee Johnson, received a fee simple title. . . .
272 Ala. at 213.
A case decided by the Oregon Supreme Court is almost identical in facts and deed language to the instant one. InPalmateer v. Reid, 212 Or. 179, 254 P. 359 (1927), the court construed the following language placed after the habendum clause: "provided, however, that the said party of the second part shall have no power to sell and convey said premises, but that at his death it is to descend to his heirs."
The Oregon court construed the clause under a statutory provision similar to Code 1975, § 35-4-2. And, although there were no words of inheritance in the granting clause, such language was found in the habendum clause. Noting the rule of construction that deeds are construed more strongly against the grantor, the Oregon court stated:
 The grantor having by clear and apt words created a fee-simple estate, his conclusion that the grantee would have no power to sell or convey the property is erroneous. It will not do for the grantor to create the highest estate known to the law, and then, in the same instrument, say to his grantee that he does not possess the right of disposition. The right of alienation is an attribute of ownership.
212 Or. at 184, 254 P. at 360.
The Oregon court also noted that the word "heirs" in the clause merely designated *Page 952 
the persons who would by statute succeed to the property in case of intestacy. Rejecting the argument that the language created a life estate with remainder, the court stated:
 Where there is a doubt as to whether the grantor intended to convey an estate in fee simple or a life estate, the doubt should be resolved in favor of the grantee and the greater estate would pass. This rule of construction is in keeping with the spirit of the statute (section 9847, Or.L.) above quoted.
212 Or. at 185, 254 P. at 361.
The questionable language in the instant case does not clearly designate a life estate in derogation of Code 1975, §35-4-2. The language is in the nature of a restraint on alienation and viewed as a whole appears to be an attempt to create a fee tail. See Armstrong v. Smith, 287 Ala. 254,251 So.2d 216 (1971); Gamble v. Gamble, 200 Ala. 176, 75 So. 924
(1917). All such fee tails are converted by statute into fee simple estates. Code 1975, § 35-4-3.
Where a deed is ambiguous, the subsequent acts of the parties are entitled to great weight in determining what they intended.Slaten v. Loyd, 282 Ala. 485, 213 So.2d 219 (1968). In Slaten, as here, the granting clause was general with no words of inheritance. The habendum clause read in part: "To have and to hold the same unto the said party of the second part for and during his natural life, and upon his death, such children or children of deceased children as he might leave surviving him, . . . ." Finding the language in the habendum clause did not override the presumption in favor of fee simple estates, this Court placed great emphasis on the subsequent conduct of the grantee in executing a quitclaim deed back to the grantor, thus conveying back the interest he had received earlier. This Court reasoned:
 "We agree with the conclusion of the trial court that subsequent conduct of the grantor and grantee in the deed to Jack Caperton was properly considered and indicated the intent of both parties to the deed and the quit claim indicated a fee simple title." 282 Ala. at 488, 213 So.2d at 221.
The conduct of the parties in the instant case also indicates their intention that the deed in question convey a fee simple estate. As noted above, a deed almost identical to the one in question conveyed an interest in Parcel 3 to John Carlisle's brother, Ira. Both deeds were executed at the same time by their father, Jasper. Ira subsequently conveyed his interest to John in a deed sufficient to have conveyed a fee simple estate. In fact, appellees' claim to Parcel 3 is based on their right to inherit through intestacy John's fee simple interest in that parcel. The significance of this deed to Ira is that, bearing in mind it contains the same language which the appellees contend limits grantee to a life estate with remainder to his heirs, John and Ira obviously regarded and treated Ira's deed as vesting in Ira a full fee simple title, as evidenced by the fact that Ira sold it to John in fee. These actions treating the deed to Ira as a fee simple conveyance indicate that the parties viewed the deed to John, identical in all significant respects, as also a fee simple conveyance.
Having found that the conduct of the parties and the language of the deed as a whole both indicate the deed's conveyance of a full fee simple estate, we address appellees' contention that the deed conveying the mineral interest to appellants' predecessors in title was void for an uncertain property description. In particular, appellees contend that the following descriptions of Parcels 2 and 3 were vague:
 17 3/4 acres in W 1/2 of SE 1/4, Sec. 28, Township 11, Range 3 West, Choctaw County, Alabama.
 18 1/2 acres, South side of SW 1/2 of SE 1/4, Sec. 28, Township 11, Range 3 West, Choctaw County, Alabama.
At the outset, we note that appellees themselves claim title to these parcels under deeds with the exact same property description as that questioned here. We find that appellees are thus estopped from attacking language identical to that under *Page 953 
which they claim a benefit. Cf. Brown v. Terry, 375 So.2d 457
(Ala. 1979) (plaintiffs were estopped from alleging a deed to be a forgery where in a previous action plaintiffs relied on the validity of that deed).
In numerous transactions in which John Carlisle participated after his acquisition of these parcels, and also in numerous transactions in which appellees themselves participated since the death of their father, relating to these parcels, these lands had been described in exactly the same language as questioned here. In each of these transactions, it was the intent of appellees and their father to include all of the lands now claimed by them and formerly claimed by their father in the W 1/2 of the SE 1/4 of Section 28. This intent was expressed in appellees' amended complaint, viz.:
TOWNSHIP 11 NORTH, RANGE 3 WEST
 SECTION 28: 17 1/4 acres in W 1/2 of SE 1/4 and 18 1/2 acres on the South side of SW 1/4 of SE 1/4, this being the only property owned by the Plaintiffs in the said W 1/2 of SE 1/4 and being intended to describe all the property owned by the Plaintiffs in the said W 1/2 of SE 1/4, whether the above descriptions be accurate or not.
Courts are reluctant to declare instruments void for an uncertain description and will look to attendant facts to make them certain. Karter v. East, 220 Ala. 511, 125 So. 655 (1929). We affirm the trial court's finding that the lands described by the questioned language were all the lands owned by John Carlisle in the half-quarter section set out, and that it was John's intent to convey a mineral interest in all the property owned by him in that half-quarter section to appellants' predecessors in title.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.