These appeals are from a final order of the Mobile Circuit Court in a declaratory-judgment action in which the plaintiffs were seeking an interpretation and declaration of the legal effect of certain language contained in a will. We have consolidated the appeals for the purpose of writing one opinion.
 I. Facts and Procedural History
The facts are undisputed. Barbara C. Anderson ("the testatrix") died in 1970. Her will, executed on April 5, 1965, was admitted to probate in August 1970. The testatrix's two daughters, Kathryn A. Reed and Gertrude A. Holmes Penton (hereinafter referred to collectively as "the daughters") were issued letters testamentary as coexecutors for the estate. In July 2005 the daughters filed a petition for a declaratory judgment, seeking an interpretation and a declaration of the legal effect of item four of the testatrix's will, which reads as follows:
 "ITEM FOUR "All the rest, residue and remainder of my property of every kind or nature, I GIVE, DEVISE AND BEQUEATH unto my two daughters, Gertrude Holmes and Kathryn Reed, to have and to hold share and share alike provided however that `The Farm' adjacent to the extension of the Blackwell Nursery Road consisting of approximately three hundred acres shall not be sold during the terms of their natural lives and twenty-one years thereafter. Upon their deaths, title to `The Farm' shall vest in the heirs of their bodies per stirpes, but not to be sold or otherwise disposed of for a period of twenty-one *Page 917 
years succeeding the death of the survivor of my two daughters."
(Emphasis added.)
Specifically, the daughters sought a judgment declaring that the language in item four restricting the sale of the farm was void as an unlawful restraint on the alienation of property and declaring that they owned the farm outright in fee simple. The petition lists the lineal descendants (20 children and grandchildren) of each daughter as necessary parties.[1] Of the 17 living lineal descendants, the following filed separate and various motions, including motions in opposition to the petition as well as motions to dismiss it: Robin G. Barnett, Candace Penry, and Jeffrey Barnett (represented by Patrick Collins), and Abby E. Reed, Ella K. Reed, Michael J. Barnett, Alexander B. Penry, Sarah G. Penry, William G. Holmes, and Virginia A. Holmes (represented by guardian ad litem W. Perry Hall).[2] Those lineal descendants who have objected to the daughters' petition for a declaratory judgment are hereinafter referred to collectively as "the heirs."
Following a hearing, the trial court entered a judgment declaring that the daughters owned the farm in fee simple, reasoning (1) that under § 35-4-2, Ala. Code 1975, all estates in land are presumed to be fee-simple estates unless there is clear and unambiguous language indicating that a lesser estate was intended; (2) that the will failed to reference a life estate; (3) that the language in the will was an attempt to create a common-law estate in fee tail, which by operation of § 35-4-3, Ala. Code 1975, is converted into an estate in fee simple; and (4) that the restriction in the will providing that the farm shall not be sold during the daughters' natural lives and for 21 years thereafter was an unlawful restriction on the alienation of land and was therefore void as against public policy.
The heirs appeal, contending that trial court erred in concluding that the testatrix's will did not evidence an intent to convey a lesser title to the farm than fee simple. Specifically, they argue that the trial court's reliance onHacker v. Carlisle, 388 So.2d 947 (Ala. 1980), a case dealing with a deed rather than a will, is misplaced and that its judgment is due to be reversed. The daughters, on the other hand, claim that the language in the will conveys the farm to them in fee simple. The issue on appeal is whether the testatrix's intent regarding the disposition of the farm can be ascertained from the four corners of her will. We conclude that it can.[3]
 II. Standard of Review
The operative facts in this case are undisputed, and we are presented with a pure question of law. Thus, "[t]his Court's *Page 918 
review of the application of the law to the undisputed facts is de novo." Lyons v. Norris, 829 So.2d 748, 750
(Ala. 2002).
 III. Analysis
Section 35-4-2, Ala. Code 1975, provides: "Every estate in lands is to be taken as a fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended."
Regarding the construction of deeds, it is well settled that a deed is construed most strongly against the grantor. SeeMoss v. Williams, 822 So.2d 392, 396-97 (Ala. 2001) ("This Court has long recognized that § 35-4-2 is simply `a statutory affirmance of the general rule that a deed is construed most strongly against the grantor.'"). "[G]reater strictness is required in the construction of deeds than of wills." Porter v. Henderson, 203 Ala. 312, 315,82 So. 668, 671 (1919).
The law in Alabama regarding the interpretation of wills is well settled:
 "[T]he intention of the testatrix is the law of the will, which the court should consider as a whole, giving effect to each provision where it is possible to do so; it is the court's duty to carry out the testatrix's intention where that intent can be ascertained. To determine the intent of a testator or testatrix, the court must look to the four corners of the instrument, and if the language is unambiguous and clearly expresses the testator's or testatrix's intent, then that language must govern. Galin v. Johnson, 457 So.2d 359 (Ala. 1984). Where a will contains ambiguous or doubtful expressions, it is the duty of the court to determine what the testator or testatrix intended. Brittain v. Ingram, 282 Ala. 158, 209 So.2d 653 (1968)."
Born v. Clark, 662 So.2d 669, 671 (Ala. 1995) (emphasis added). Therefore, the statutory presumption that every estate in land should be taken to be in fee simple unless it clearly appears otherwise, although applicable in the context of a will, must be read in that context in light of the rules governing ascertainment of the intent of the testatrix.
The trial court, relying primarily on Hacker, supra, found that the testatrix's will in the instant case conveyed to the daughters fee-simple title to the farm based on the absence of any express reference in the will to a life estate. The trial court apparently reasoned that without such language there could be no intent on the testatrix's part to convey a lesser estate than fee simple.
We find Hacker readily distinguishable.Hacker involved a deed executed in 1914 by Jasper Carlisle to his son, John Carlisle. The deed contained the following handwritten clause: "It is understood that [John Carlisle] is not to sell above described lands but it is to go to his heirs." 388 So.2d at 949. After John Carlisle died, his heirs sought an interpretation and declaration of the interest conveyed by the deed. The trial court found that Jasper Carlisle had conveyed a life estate to his son John Carlisle with a remainder interest in John's heirs. This Court reversed the trial court's judgment, concluding, in part, that the handwritten portion of the deed neither "clearly" nor "minimally" designated a life estate in order to overcome the presumption in favor of a conveyance of a fee-simple estate. In ascertaining the intent of Jasper Carlisle, this Court also relied upon the conduct of the parties after the conveyance, which confirmed Jasper Carlisle's intent to convey a fee-simple estate. Hence, the language in the deed when viewed as a whole, coupled with the parties' conduct, indicated that *Page 919 
the estate conveyed was a fee-simple estate.
In keeping with the well-settled law of wills as opposed to deeds, our only inquiry is whether the testatrix's intent can be ascertained from the four corners of the will or, in this case, from the four corners of item four in the will. Of course, a bequest in a will does not become effective until the death of the testatrix; thus, unlike the circumstances involving a deed as evidenced by Hacker, the occasion to evaluate the postdisposition conduct of the testatrix/grantor never presents itself.
The first provision in item four regarding the farm states that the farm "shall not be sold during the terms of [thedaughters'] natural lives and twenty-one years thereafter." (Emphasis added.) The daughters claim that this language is legally insufficient to create a life estate. The daughters, however, ignore the well-settled principle that a court has an obligation to consider the language of the entire will in order to ascertain the testatrix's intent as to a particular provision. See McLean v. Brasfield, 460 So.2d 153, 155
(Ala. 1984) ("The polestar to guide a court in the construction of a will is the intent of the testator and that intent should be determined by considering the instrument as a whole and not by construing any subpart separately."). Standing alone, the language in the first provision may seem lacking in complete meaning, being silent as to the creation of a remainder interest in favor of others. However, when the first provision is read in conjunction with the second provision, which states that "[u]pon [the daughters'] deaths, title to `The Farm' shallvest in the heirs of [the daughters'] bodies per stirpes," the testatrix's intent is clear. (Emphasis added.) The second provision shows that the testatrix did not intend for the daughters to have a fee-simple estate, and a reading of the first provision, in light of the second provision, imports that the testatrix intended the daughters to have only a life estate in the farm with a remainder interest to vest in the daughters' heirs per stirpes. The language in both provisions, when read together, should be given its plain and ordinary meaning. InPrater v. Hughston, 202 Ala. 192, 193, 79 So. 564, 565
(1918), this Court stated:
 "It may be true that, if clause 1 stood alone in a deed, it would be void for uncertainty, but wills are liberally construed so as to effectuate the intention of the testator, and must receive greater liberality of construction than is to be given to ordinary legal instruments."
We find no language in item four of the testatrix's will to suggest that the testatrix intended to convey the farm to the daughters outright in fee simple. Instead, the language imports that the testatrix intended to convey a lesser estate, and such intention overcomes the presumption set forth in § 35-4-2, Ala. Code 1975. Accordingly, the daughters have only a life estate in the farm and their heirs have a remainder interest therein.
The trial court also found that the language in the will stating that "[u]pon [the daughters'] deaths, title to `The Farm' shall vest in the heirs of their bodies per stirpes, but not to be sold or otherwise disposed of for a period of twenty-one years succeeding the death of the survivor of my two daughters" was merely an attempt by the testatrix to create a fee tail, which is automatically converted by statute into a fee-simple estate. See § 35-4-3, Ala. Code 1975 ("Every estate in real or personal property in fee tail, now or hereafter created, becomes an estate in fee simple, and the person in whom such a conditional fee vests has the same power over the estate as in case of pure and absolute fees.").Black's Law Dictionary *Page 920 
650 (8th ed.2004) defines "fee tail" as "[a]n estate that is heritable only by specified descendants of the original grantee, and that endures until its current holder dies without issue (e.g., `to Albert and the heirs of his body')." The trial court's rationale presupposes the validity of its conclusion that the daughters otherwise hold a conditional fee-simple interest, as opposed to a mere life estate. Because we have determined that the daughters hold only a life estate, we need not address the effect of the statutory conversion of a conditional fee tail to a fee-simple estate that might otherwise be presented by such language.
We note that the trial court, after holding that the daughters held a fee-simple interest in the farm, declared void the restriction on the sale of the farm until 21 years after the death of the last of the two daughters to die. Because the trial court did not find that the heirs held any remainder interests, it therefore never answered the question of the effect, if any, of that restriction on the remaindermen. In other words, the premise upon which the trial court based its declaration that the restriction was void as an unlawful restriction on the alienation of land was based on an erroneous finding that the daughters held title in fee simple. We decline to review an issue, i.e., the effect, if any, of that restriction on theremaindermen, that was not considered by the trial court.
Based on the foregoing, the judgment of the trial court is reversed and the cause remanded.
REVERSED AND REMANDED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.
[1] The daughters' lineal descendants are: Mark B. Reed, Timothy P. Reed (deceased), Kathryn K. Reed, Anderson L. Reed, Damon Benjamin Reed, Byron Anderson Reed, Abby E. Reed, Ella K. Reed, Oliver W. George (deceased), Edward E. Holmes, Sr. (deceased), Robin G. Barnett, Candace G. Penry, Aimee H. Stone, Edward E. Holmes II, Jeffrey J. Barnett, Michael J. Barnett, Alexandra B. Penry, Sarah G. Penry, William G. Holmes, and Virginia A. Holmes.
[2] At some point during the proceedings below, Richard G. Alexander was appointed guardian ad litem for two minors who had previously been represented by W. Perry Hall: Anderson L. Reed and Kathryn K. Reed. Alexander, acting on behalf of these minors, filed a brief in these appeals, in essence adopting the daughters' brief and taking the daughters' position on appeal.
[3] The heirs also contend that the daughters' petition is barred by the statute of repose. Our resolution of the appeal in favor of the heirs on the issue of construction of the will renders it unnecessary to consider this alternative basis for reversing the trial court's judgment.